

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03CV12517 MEL

---

MCF COMMUNICATIONS, INC. and )
OMNIPOINT HOLDINGS, INCORPORATED )
              )
        Plaintiff )      MAGISTRATE JUDGE _Cohen_
              )
v.            )
              )
THE TOWN OF STOUGHTON, )
THE TOWN OF STOUGHTON ZONING BOARD OF APPEALS, )
and ALLAN R. KATZ, EDWARD F. COPPINGER, ORLANDO )
DiGIAMPIETRO, HERBERT MUSMON, STEVEN D. MITCHELL, )
and WILLIAM FRANCIS, individually and as they are members of the )
STOUGHTON ZONING BOARD OF APPEALS )
              )
        Defendants

AMOUNT $ 150.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. CMG
12-16-03

## COMPLAINT

### Summary of Action

This action arises out of the Town of Stoughton Board of Appeals' (the "Board") unlawful denial of applications for a variance and a special permit requested by MCF Communications, Inc ("MCF") and Omnipoint Holdings, Inc. ("Omnipoint") under the Stoughton Zoning By-law (the "by-law"). MCF and Omnipoint sought approval for a variance from the frontage requirements of the zoning by-law, made necessary due to the prohibitive, and therefore unlawful, requirement that a wireless communication facility must be the principal use on a lot. The Board's denial of the variance request, and subsequent denial of the special permit request, violate section 704 of the Federal Telecommunications Act of 1996, 47 U.S.C. §332(c),

as they have the effect of prohibiting the provision of personal wireless services, unreasonably discriminate among providers of functionally equivalent services, and are not supported by substantial evidence in a written record. As a result, MCF and Omnipoint seek an Order from this Court directing the Board of Appeals to grant Omnipoint a variance and special permit.

## THE PARTIES

1. Plaintiff MCF is a Massachusetts corporation with a usual place of business at 668 Main Street, Suite 114 Wilmington, MA. 01887.

2. Plaintiff Omnipoint is a Delaware corporation with a usual place of business at 12920 S. E. 39th Street, Bellevue, Washington, 98006. The Plaintiff regularly transacts business within the Commonwealth.

3. The Defendant, the Town of Stoughton (the "Town"), is a duly authorized municipality constituted and existing under the laws of the Commonwealth of Massachusetts.

4. The Defendant, the Board of Appeals (hereinafter, "the Board"), is a duly authorized unit of the Town that has been delegated the authority, among other things, to administer provisions of the Town's Zoning By-law.

5. The Defendant, Allan R. Katz, resides at 19 Clover Lane in the Town of Stoughton and is the duly elected Chairman of the Board.

6. The Defendant, Orlando DiGiampietro, resides at 65 Heelan Avenue in the Town of Stoughton and is a duly appointed member of the Board.

7. The Defendant, Herbert Musmon, resides at 34 E. Vanston Road in the Town of Stoughton and is a duly appointed member of the Board.

8. The Defendant, Edward F. Coppinger, resides at 62 Decota Drive in the Town of Stoughton and is a duly elected appointed of the Board.

9. The Defendant, Steven D. Mitchell, resides at 566 Morton Street in the Town of Stoughton and is a duly appointed member of the Board.

10. The Defendant, William Francis, resides in the Town of Stoughton and is a duly elected member of the Board.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction of this action under 28 U.S.C. §1331, as this action arises under the laws of the United States, specifically section 704 of the Telecommunications Act of 1996.

12 Venue is proper in this Court under 28 U.S.C. §1391(b), since the defendants each reside in the District, and the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### The Personal Communications Service Technology

13. MCF Communications is a provider of personal wireless communications facilities that constructs towers to support wireless transmitting equipment and rents space to FCC-licensed wireless carriers.

14. Most of MCF Communications' customers and business partners are FCC-licensed providers of cellular and digital telephone services. With respect to MCF Communications' proposed tower location in the Town, MCF Communications has a

commitment to occupy space on the proposed tower from Omnipoint Holdings, Inc., a FCC-licensed providers of wireless communications services.

15. Omnipoint Holdings, Inc., a wholly owned subsidiary of Voicestream Wireless, Inc., operates a communications venture committed to providing integrated wireless personal communications services (PCS) by building wireless networks in specified markets across the United States under license purchased from the Federal Communications Board (FCC). One of those market areas is in Southeastern Massachusetts and includes the Town of Stoughton. PCS technology is a new generation of wireless service that uses digital transmission to improve the services available to customers. Omnipoint deploys a state-of-the-art Global Standard for Mobile (GSM) technology, which is an offshoot of Code Division Multiple Access (CDMA) technology.

16. Unlike cellular services using analog-based systems, PCS digital technology converts voice and data signals into a stream of digits to allow a single radio channel to carry multiple simultaneous signal transmissions. This allows Omnipoint to offer services unavailable in analog-based systems, such as secured transmissions and enhanced voice, high-speed data, paging and image capabilities as well as voice mail, call forwarding and call waiting.

17. Mobile telephones using PCS technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is connected by microwave, fiber-optic cable, or ordinary telephone wire to the Base Station Controller, subsequently routing the calls throughout the world.

18. Because the PCS system has a lower signal and a much higher frequency than traditional cellular technology, the range between the PCS mobile telephone and the antennas is limited.

19. In order to provide continuous service to a PCS telephone user, coverage must overlap in a grid pattern resembling a honeycomb. In the event that Omnipoint is unable to construct a cell site within a specified geographic area, Omnipoint will not be able to provide service to the customer within that area.

20. Omnipoint's engineers use complex computer programs and extensive field-testing to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cells and other factors such as population concentrations. In order for the entire system to be operational, there must be properly placed cell sites installed and functioning so that "seamless" coverage can be realized, and only when the entire system is operational will a PCS telephone user be able to conduct an uninterrupted conversation throughout a given territory. If there is no adequately functioning cell site within a given area, mobile customers in the area will experience an unacceptable level of dropped calls.

21. Based upon Omnipoint's research and analysis, Omnipoint has determined that it has a substantial gap in coverage in the area of Stoughton generally described as the southwestern portion of the town where Bay Road runs from north to south along the Sharon town line.

22. The applicants first sought to identify whether a sufficient number of existing structures exist in suitable locations to which a wireless provider could install its wireless transmitting equipment, before concluding that a new tower structure is necessary. This practice customary to the wireless communications business. The applicants determined that there are no existing structures suitable for the installation of wireless equipment to close Omnipoint's coverage gap.

23. After reviewing numerous potential sites, MCF and Omnipoint closely evaluated six final candidates. Because of the restrictive requirements of the zoning by-law pertaining to wireless communications, there were very few land parcels suitable to the by-law and appropriate for development of a free standing monopole.

24. At the conclusion of their evauulation, the applicants identified a property located at 76 Jordan Drive, owned by Daniel J. and Kathleen M. Andrews, which they determined to be suitable for development of a communications tower, and MCF entered into a lease for a portion of the property. The property is located in the "Residential Suburban" (RA) zone

### Federal Statutory Control Over PCS Siting

25. Section 704 of the Federal Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. §332(c), governs federal, state and local government regulation of the siting of PCS facilities such as the one at issue here.

26. The TCA provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with section 332 (c)(7) of the Act may seek expedited review in the federal courts. 47 U.S.C. §332(c)(7)(B)(v).

## The Stoughton Zoning By-law

27. Unlike the vast majority of communities within the Boston Metropolitan area, the Town of Stoughton has yet to adopt a zoning ordinance specific to the regulation of personal wireless services facilities (PWSF). As a result, wireless facilities are regulated under the general use and dimensional regulations of the Stoughton Zoning Ordinance.

28. Under the Use Table of the ordinance, "communications and television tower" is a use permitted in all zoning districts except the Commercial Business District (CBD) by special permit.

29. Under Section VI (D) of the ordinance, there is only one "principal structure" permitted on any one lot.

30. With respect to wireless communications facilities, the ordinance has been interpreted and applied by the Board such that a personal wireless communication facility must occupy its own lot.

31. The ordinance provides that the minimum lot size in the Residential – Suburban A (RA) district is 55,000 square feet.

32. The ordinance provides that the minimum frontage for a lot in the Residential-Suburban A district is 150 feet.

## Prior Applications for Personal Wireless Communication Facilities

33. On or about April 17, 1997, Sprint Spectrum LP ("Sprint") and Nextel Communications of the Mid-Atlantic, Inc. ("Nextel") sought and received a variance and special permit (in a combined single application) so as to permit a 180' monopole PWSF in the Town of Stoughton

7

34. Since the granting of the variance and special permit for the Sprint tower, the Board has entertained numerous requests of the permit holder to eliminate limitations and conditions on said permit, including those limiting the number of carriers and the limitation of one principal use on the lot.

## The Variance and Special Permit Applications

35. On or about June 13, 2003, MCF and Omnipoint jointly filed an application for a variance with the Board. The application sought a variance from the minimum frontage requirement of the zoning ordinance so that an otherwise conforming eleven acre lot located at 76 Jordan Drive could be subdivided in order to conform to the "one principal use per lot" requirement.

36. On or about June 12, 2003, MCF filed an application for a special permit with the Board. The application sought a special permit pursuant to Section X (K) (Special Permits) of the zoning ordinance.

37. Both applications were scheduled separately for hearings on August 7, 2003.

38. On August 7, 2003, the Board opened hearings on each application for approximately ten minutes, and rescheduled the hearings for October 7, 2003.

39. The hearings were subsequently rescheduled again to November 6, 2003, during which evidence was taken. At the conclusion of the variance hearing on November 6th, the Board voted unanimously to deny the variance application (but did not act on the special permit application). The decision was filed in the office of the Town Clerk on November 21, 2003. A copy of the decision denying the variance is attached hereto as Exhibit A. The hearing on the special permit application was continued once again to November 20, 2003.

40.     On November 20, 2003, the Board took further evidence on the special permit application and at the conclusion thereof, the Board voted unanimously to deny the special permit.

41.     On December 12, 2003, (the day following the last day upon which the applicant could have filed an appeal of the variance denial under M.G.L. Ch. 40A section 17), the Board's special permit denial was filed in the office of the Town Clerk. A copy of the decision denying the special permit is attached hereto as Exhibit B.

42. In each instance, the Board decision ignored the existing precedents it had previously set in granting variances and special permits to providers of functionally equivalent services.

## The Telecommunications Act of 1996

43.     Article VI, Clause 2, of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution and the Laws of the United States which shall be made in Pursuance thereof…shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

44.     The TCA governs the regulation of the placement, construction, and modification of personal wireless service facilities and, under the Supremacy Clause, preempts state laws and municipal ordinances or by-laws affecting facilities to the extent that such laws, ordinances or by-laws conflict with the Act.

45.     The applicants' variance and special permit applications constitute requests to provide "personal wireless services" within the meaning of the Act, and, as such, are entitled to the protection of the Act.

### Count I- Variance Denial - Lack of Substantial Evidence
### in a Written Record (47 U.S.C. §332(c)(7)(B)(i)(II))

46.     The Plaintiffs hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47.     Pursuant to 47 U.S.C. §332(c)(7)(B)(i)(II), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

48.     It is the Defendant's burden to produce substantial evidence supporting its denial of Omnipoint's application.

49.     The Board of Appeal's decision denying the applicants' variance application violates the Act in that it is utterly devoid of any explanation of the reasons for the denial such that a reviewing court could evaluate the evidence in the record supporting those reasons. 47 U.S.C. §332(c)(7)(B)(iii); <u>Southwestern Bell Mobile Systems, Inc. v. Laurence M. Todd, et. als.</u>, 2001 U. S. App. LEXIS 5265 (1st Cir. 2001).

50.     Accordingly, the Board of Appeals' action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis. Further, the Court should exercise its power to issue an order commanding the Board of Appeals to grant the variance as requested by the Plaintiffs.

### Count II- Special Permit Denial - Lack of Substantial Evidence
### in a Written Record (47 U.S.C. §332(c)(7)(B)(i)(II))

51.     The Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

52. Pursuant to 47 U.S.C. §332(c)(7)(B)(i)(II), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

53. It is the Defendant's burden to produce substantial evidence supporting its denial of the Plaintiffs' application for a special permit.

54. The Board of Appeals' decision denying the applicants' special permit application violates the Act in that it is utterly devoid of any explanation of the reasons for the denial such that a reviewing court could evaluate the evidence in the record supporting those reasons. 47 U.S.C. §332(c)(7)(B)(iii); Southwestern Bell Mobile Systems, Inc. v. Laurence M. Todd, et. als., 2001 U. S. App. LEXIS 5265 (1st Cir. 2001).

55. Accordingly, the Board of Appeals' action are in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis. Further, the Court should exercise its power to issue an order commanding the Board of Appeals to grant the special permit as requested by the Plaintiffs.

### Count III-Variance Denial - Prohibition of Personal Communication Services (47 U.S.C. §332(c)(7)(B)(i)(II))

56. The Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

57. Pursuant to 47 U.S.C. §332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local

11

government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal communications services."

58. The Board's denial of the Plaintiffs' variance application violates the Act in that it prohibits or has the effect of prohibiting the provision of personal communications services. 47 U.S.C. §332(c)(7)(B)(i)(II).

59. Accordingly, the Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis. Further, the Court should exercise its power to issue an order commanding the Board to grant the special permit as applied for by Omnipoint.

### Count IV-Special Permit Denial - Prohibition of Personal Communication Services (47 U.S.C. §332(c)(7)(B)(i)(II))

60. The Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

61. Pursuant to 47 U.S.C. §332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal communications services."

62. The Board's denial of the Plaintiffs' special permit application violates the Act in that it prohibits or has the effect of prohibiting the provision of personal communications services. 47 U.S.C. §332(c)(7)(B)(i)(II).

63. Accordingly, the Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis. Further,

the Court should exercise its power to issue an order commanding the Board to grant the special permit as applied for by Omnipoint.

### Count V – The Decision as Discrimination Among Providers of Functionally Equivalent Services (47 U.S.C. §332(c)(7)(B)(i)(I))

64. The Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

65. Because the Board previously approved applications of Sprint Spectrum LP and Nextel for similar variances and special permits so as to permit each of them to erect their PWSFs under similar circumstances and yet denied MCF/Omnipoint's applications, the Board has discriminated against MCF/Omnipoint and placed them at a competitive disadvantage within the Stoughton market area.

66. Accordingly, the Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis. Further, the Court should exercise its power to issue an order commanding the Board to grant the variance and special permit as applied for by the Plaintiffs.

### Count VI – The Ordinance as an Effective Prohibition (47 U.S.C. §332(c)(7)(B)(i)(II))

67. The Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

68. Unless varied as requested, the requirement that a PWSF must be the principal use on a lot, in light of the value of an undeveloped buildable lot and the minimum lot size and dimensional requirements of the ordinance, renders the placement of a PWSF in the Town of Stoughton practically and economically unfeasible.

69. Accordingly, the Court should exercise its power to find and declare Section VI (D) null and void as applied to any application for a PWSF.

### Count VII - Violation of the Reconstruction Civil Rights Act, 42 U.S.C. §1983

70. The Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

71. Title 42 U.S C. §1983 provides, in relevant part, that:

> [e]very person who, under color of any statute, ordinance regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress.

72. The Board acted under color of law in denying the Plaintiffs' application for a special permit.

73. The Board violated the rights, privileges or immunities of the Plaintiffs are entitled to under the Act. The Defendants therefore acted in violation of the Plaintiffs' rights as secured by 42 U.SC. §1983.

74. Accordingly, the Board's action should be set aside and enjoined by the Court as a violation of 42 U.S.C. §1983. Further, the Court should exercise its power to issue an order commanding the Board to grant the variance and special permit as applied for by the Plaintiffs.

75. As a direct and proximate result of the Board's violation of the Act, the Plaintiffs have been damaged, financially and otherwise, in that they have lost and continue to lose the opportunity to market their respective assets or services.

WHEREFORE, the Plaintiffs respectfully request the following relief as against the Defendants:

1. An expedited review of the matters set forth in this Complaint;

2. A Preliminary Injunction ordering the Board of Appeals forthwith to grant the Plaintiffs a variance and special permit;

3. A Permanent Injunction ordering the Board of Appeals forthwith to grant the Plaintiffs a variance and special permit;

4. A judgment that the Defendants' actions violated the Act and are therefore void and invalid;

5. A judgment that the Defendants' actions violated the Reconstruction Civil Rights Act and are therefore void and invalid;

6. An award of the Plaintiffs' costs of suit herein, including reasonable attorneys' fees; and,

7. Such other and further relief as the Court deems just and proper.

Respectfully submitted,
MCF COMMUNICATIONS, INC. and
OMNIPOINT HOLDINGS, INC.
By their attorneys,

_____
Peter B. Morin, Esquire (BBO#355155)
McDermott, Quilty & Miller LLP
21 Custom House Street, Suite 300
Boston, MA 02110
(617) 946-4600

Dated: December 16, 2003

15