UNITE D STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 03CV12517-MEL

MFC COMMUNICATIONS, INC. and OMNIPOINT
HOLDINGS, INCORPORATED,

      Plaintiffs

v.

THE TOWN OF STOUGHTON, THE TOWN OF
STOUGHTON ZONING BOARD OF APPEALS, and
ALLAN R. KATZ, EDWARD F. COPPINGER,
ORLANDO DiGIAMPIETRO, HERBERT MUSMON,
STEVEN D. MITCHELL, and WILLIAM FRANCIS,
individually and as they are members of the
STOUGHTON ZONING BOARD OF APPEALS,

      Defendants

CERTIFICATE OF CONFERRAL
UNDER LOCAL RULE 7.1

I, Patricia A. Cantor, hereby state:

1.    I am counsel of record to the Defendants in the above-captioned matter.

2.    I certify that I have conferred with counsel for the Plaintiffs in a good faith attempt to resolve

the issues regarding the Defendants' Motion to Dismiss Count VII.

TOWN OF STOUGHTON, ET AL.,

By their attorneys,

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party electronically
by mail hereon _____

227712/60700/0524

Brian W. Riley (BBO# 555385)
Patricia A. Cantor (BBO# 072380)
Kopelman and Paige, P.C.
  Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 03CV12517-MEL

|  |  |
|---|---|
| MFC COMMUNICATIONS, INC. and OMNIPOINT HOLDINGS, INCORPORATED,<br><br>      Plaintiffs<br><br>v.<br><br>THE TOWN OF STOUGHTON, THE TOWN OF STOUGHTON ZONING BOARD OF APPEALS, and ALLAN R. KATZ, EDWARD F. COPPINGER, ORLANDO DiGIAMPIETRO, HERBERT MUSMON, STEVEN D. MITCHELL, and WILLIAM FRANCIS, individually and as they are members of the STOUGHTON ZONING BOARD OF APPEALS,<br><br>      Defendants | DEFENDANTS' MOTION<br>TO DISMISS COUNT VII |

The Town of Stoughton ("Town"), the Zoning Board of Appeals of the Town of

Stoughton, and Allan R. Katz, Edward F. Coppinger, Orlando DiGiampietro, Herbert Musmon,

Steven D. Mitchell, and William Francis, as members of the Stoughton Zoning Board of Appeals

("Zoning Board of Appeals"), hereby move that Count VII of the Complaint, a claim under 42

U.S.C. §1983, in the above-entitled action be dismissed under F.R.Civ.P. 12(b)(6) for failure to

state a claim upon which relief may be granted.

In support of this Motion, the Defendants rely on the following:

1.    The Complaint is brought under the Telecommunications Act of 1996, 47 U.S.C.

        §332(c)(7) ("TCA"), from the November 21, 2003 written decision of the Zoning

        Board of Appeals denying a variance in order to subdivide a lot to create a second

lot to construct a 190-foot-high telecommunications tower at 76 Jordan Road, Stoughton, Massachusetts and from the December 12, 2003 written decision of the Zoning Board of Appeals denying special permit to install for the proposed tower. Complaint ¶¶39, 41, Exhibits A and B.

2.      Count VII of the Complaint alleges that the denials "are in violation of the Reconstruction Civil Rights Act, 42 U.S.C.§1983." Complaint ¶¶70 – 75.

3.      Under the TCA, the Plaintiffs may not recover under 42 U.S.C. §1983.

The Town and the Board of Zoning Appeals also rely on their Memorandum of Law filed herewith. By filing this motion, the Town and the Zoning Board of Appeals do not waive any other defenses regarding the Plaintiffs' Complaint.

WHEREFORE, the Town and the Zoning Board of Appeals move that Count VII be dismissed and that any relief, based on that Count (See Complaint, Relief ¶¶5 and 6) be denied.

TOWN OF STOUGHTON, ET AL.,

By their attorneys,

Brian W. Riley (BBO# 555385)
Patricia A. Cantor (BBO# 072380)
Kopelman and Paige, P.C.
Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party *electronically* by mail hand on *August 9, 2004*

227358/60700/0524

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 03CV12517-MEL

| | |
|---|---|
| MFC COMMUNICATIONS, INC. and OMNIPOINT HOLDINGS, INCORPORATED,<br><br>     Plaintiffs<br><br>v.<br><br>THE TOWN OF STOUGHTON, THE TOWN OF STOUGHTON ZONING BOARD OF APPEALS, and ALLAN R. KATZ, EDWARD F. COPPINGER, ORLANDO DiGIAMPIETRO, HERBERT MUSMON, STEVEN D. MITCHELL, and WILLIAM FRANCIS, individually and as they are members of the STOUGHTON ZONING BOARD OF APPEALS,<br><br>     Defendants | DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION TO DISMISS COUNT VII</u> |

       This case is brought under the Telecommunications Act of 1996 ("TCA"), 42 U.S.C.

§332(c)(7).  The plaintiffs, MFC Communications, Inc. ("MFC") and Omnipoint Holdings, Inc.

("Omnipoint"), claim that the Defendants, the Town of Stoughton ("Town") and its Zoning

Board of Appeals ("Zoning Board of Appeals"), violated the TCA by denying a special permit

and a variance to install 190-foot-high telecommunications tower at 176 Jordan Drive,

Stoughton, Massachsuetts.  For the reasons stated in their Motion to Dismiss and argued herein,

the Town and the Zoning Board of Appeals contend that Count VII of the Complaint must be

dismissed under F.R.Civ.P.12(b)(6) because Count VII fails to state a claim upon which

relief may be granted in that the TCA does not allow recovery under 42 U.S.C. §1983.[1]/

---

[1]/     By filing the Motion to Dismiss Count VII, the Town and the Zoning Board of Appeals do not waive any other defenses regarding the Plaintiffs' Complaint.

A.    Standards applicable to a Motion to Dismiss

Under Fed. R.Civ.P.12(b)(6), a complaint must be dismissed if it fails to state a claim

upon which relief may be granted against the defendants.  A Rule 12(b)(6) motion to dismiss is

the usual and proper method to test the legal sufficiency of a complaint.  See Moore's Federal

Practice, Vol.2A, §12.08, p.2266 (2nd Ed. 1984).  On a motion to dismiss, the reviewing court

construes well-pleaded material allegations of the complaint as admitted, Walker Process

Equipment v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965), and all reasonable inferences

are drawn in the plaintiff's favor.  See Wagner v. Devine, 122 F.3d 53, 58 n.2 (1st Cir. 1997).

The court is not bound, however, to accept as true conclusions of law or unwarranted deductions

of fact.  See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971

(1st Cir. 1993).  Where it appears to a certainty that the plaintiff is entitled to no relief under any

state of facts that could be proved in support of its claims, dismissal is proper.  See Ballou v.

General Electric Co., 393 F.2d 398 (1st Cir. 1968).

When these standards are applied to Count VII, the Complaint must be dismissed.

B.    Count II of the Complaint must be dismissed because the TCA does not provide
      for damages and attorneys fees under §1983.

The great weight of opinion among the judges of the United States District Court in the

District of Massachusetts is that denial of relief under the TCA does not give rise to a claim

under 42 U.S.C. §1983, and therefore a claim under §1983 must be dismissed. The

overwhelming majority view holds that even if a plaintiff succeeds against a municipality on the

merits of its claim that the municipality violated the TCA, the plaintiff may not recover under

§1983. See, Exhibit A attached hereto: Omnipoint Communications MB Operations, LLC v.

Town of Lincoln, No. 99-11012-EFH, Order, July 26, 1999 (Harrington, J.): Sprint Spectrum,

LP. v. Town of Watertown, No. 01-10516-RCL, Order, December 11, 2000 (Lindsay, J.); Nextel

2

Communications of the Mid-Atlantic, Inc. v. Town of Milford, No. 00-11576-GAO,

Memorandum and Order, August 2, 2001, pp. 13-14 (O'Toole, J.); Nextel Communications of

the Mid-Atlantic, Inc. v. Town of Randolph, 193 F.Supp. 2d 311, 322 (D.Mass. 2002) (Saris, J.),

vacated on other grounds.

Except for Judge Tauro (see, Sprint Spectrum L.P. v. Town of Easton, 982 F.Supp. 47

[D.Mass. 1997] and Omnipoint Holdings, Inc. v. Town of Westford, 206 F.Supp. 2d 166

[D.Mass. 2002]), all of the judges who have addressed the issue in this district have followed the

reasoning of Judge Ponsor in National Telecommunication Advisors, Inc. v. City of Chicopee,

16 F.Supp. 2d 117 (D.Mass. 1998) ("Chicopee"). There is no First Circuit case deciding the

question and the only Circuit Court decision rejects a §1983 claim for a TCA violation.  Nextel

Partners, Inc. v. Kingston Township, 286 F.3d 681 (3rd Cir. 2002). Compare, AT&T Wireless v.

City of Atlanta, 210 F.3d 1322 (11th Cir. 2000), vacated 260 F.3d 1320 (11th Cir. 2001). The

reasoning in the Chicopee case provides the most complete analysis of the issue and should be

followed here.

Relying on factors articulated by the Supreme Court in Blessing v. Freestone, 520 U.S.

329 (1997), and Middlesex County Sewerage Auth. v. National Sea Clammers Assoc., 453 U.S.

1 (1981), as well as other Supreme Court and First Circuit opinions, the Chicopee case holds

"that the TCA is a comprehensive enforcement mechanism that implicitly precludes the

availability of a remedy under §1983." 16 F. Supp.2d at 118. The Chicopee case, consistently

with Blessing and Sea Clammers, cites four criteria for concluding that even if a violation of the

TCA is proven, there is no remedy under §1983.

First, given the clear, detailed process provided by the TCA, allowing quick and complete

remedies for individuals improperly denied permission to erect personal wireless

communications facilities and the absence of any indicia of contrary Congressional intent, "it is

manifest that Congress provided precisely the remedies it considered appropriate when drafting the TCA." 16 F. Supp.2d at 122.  Second, the TCA provides its own private cause of action with mandated expedited judicial review.  Third, the statutory structure of the TCA constitutes a framework that provides "comprehensive remedial schemes for purposes of §1983 preclusion."  Fourth, a remedy under §1983 adds "nothing to plaintiff's remedial armament under the [TCA] – except the opportunity to seek attorney's fees under §1988." Id.  As the Chicopee court ruled, id. at 122-23:

> In other words, plaintiff has tacked Count III onto its complaint merely for fees.
> While the desire to recoup fees is understandable, the use of § 1983 in such a way
> trivializes this important statute and is inconsistent with its intent.

Thus, even if Omnipoint and MFC ultimately succeed in convincing the Court that the Zoning Board of Appeals' decision violated the TCA, they  may not recover under §1983.  While Omnipoint seeks both fees and damages, for the reasons stated in the Chicopee case, a remedy pursuant to §1983 is precluded by the totality of the relief afforded by the TCA.

For the reasons argued herein, the Motion to Dismiss Count VII and the relief requested related thereto should be granted.

TOWN OF STOUGHTON, ET AL.,

By their attorneys,

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party electronically
by mail hand on August 9 2004

227357/60700/0524

Brian W. Riley (BBO# 555385)
Patricia A. Cantor (BBO# 072380)
Kopelman and Paige, P.C.
  Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| OMNIPOINT COMMUNICATIONS MB OPERATIONS, LLC,<br>     Plaintiff<br><br>    v.<br><br>TOWN OF LINCOLN, ET AL.,<br>     Defendants. | CIVIL ACTION NO.:<br> 99-11012-EFH |

## O R D E R

### July 26, 1999

HARRINGTON, D.J.

After a review of the record in this case, the Court grants Defendants' Partial Motion to Dismiss (Count VI). The Court holds that a Title 42 U. S.C. § 1983 action is not available to obtain a remedy for violation of the Telecommunications Act, 47 U.S.C. § 332(c)(7). National Telecommunication Advisors, Inc. v. City of Chicopee, 16 F.Supp.2d 117 (D. Mass. 1998).

SO ORDERED.

EDWARD F. HARRINGTON
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SPRINT SPECTRUM L.P. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TOWN OF WATERTOWN, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

*00-10516-RCL*

Civil Action No. 00-~~10689~~-RCL

ORDER

Lindsay, District Judge.

Before the court is the defendants' partial motion to dismiss Count IV of the complaint, which seeks relief under 42 U.S.C. §1983 for the alleged violation of the plaintiff's rights under a portion of the Telecommunications Act of 1996, 47 U.S.C. §332(c)(7)(B) (the "TCA"). In opposing the motion, the plaintiff urges the court to rely on *AT&T Wireless PCs Inc. v. City of Atlanta*, 210 F.3d 1322 (11th Cir. 2000). I note that that case has been vacated on jurisdictional grounds and presumably does not represent the law even in the Eleventh Circuit. *See* 223 F.3d 1324 (11th Cir. 2000). More to the point, however, I am not persuaded by the reasoning in *AT&T Wireless*. The TCA provides a private right of action and expedited judicial review. Thus, in my view, the statute is sufficiently comprehensive to preclude a 42 U.S.C. §1983 claim based on a substantive violation of a plaintiff's rights under the TCA. The saving clause referenced by the Eleventh Circuit in *AT&T Wireless* does not appear to mandate a different



result.  *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 21 n.31 (1981).  In my view, the better reasoned analysis of the issue raised by the present motion is that of Judge Ponsor in *National Telecommunication Advisors, Inc. v. City of Chicopee*, 16 F.Supp.2d 117, 122-23 (D.Mass. 1998).  I adopt that reasoning and GRANT the defendants' motion to dismiss Count IV of the complaint.

So ordered.

United States District Judge

Date: Dec. 11, 2000

-2-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-CV-11576-GAO

NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC.,
d/b/a NEXTEL COMMUNICATIONS,
Plaintiff,

v.

TOWN OF MILFORD, MASSACHUSETTS;
ZONING BOARD OF APPEALS OF THE TOWN OF MILFORD, MASSACHUSETTS;
and JONATHAN M. BRUCE, FERNANDO RODRIGUES, MICHAEL P. VISCONTI, JR.,
NASSARENO L. BACI and EDWARD J. RAPPAZINI in their capacities as members of the
Zoning Board of Appeals of the Town of Milford, Massachusetts,
Defendants.

**MEMORANDUM AND ORDER**
**August 2, 2001**

O'TOOLE, D.J.

The plaintiff Nextel Communications of the Mid-Atlantic, Inc. ("Nextel") brings this action

under the Telecommunications Act of 1996 ("TCA") for a declaratory judgment and an injunction

compelling the Town of Milford, Massachusetts to grant Nextel the necessary permits and approvals

for the construction of a wireless antenna tower within the Town. Milford's Zoning Board of

Appeals ("the ZBA") denied Nextel's application for a special permit to construct the antenna tower.

Nextel alleges that the ZBA's denial was not supported by "substantial evidence contained in a

written record" in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (Count I), that it unreasonably

discriminated against Nextel in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) (Count II), and that the

denial had the effect of prohibiting Nextel from providing personal wireless services in Milford in

violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) (Count III).[1] Nextel also contends that the Town violated its federal rights under 42 U.S.C. § 1983 (Count IV), and that the ZBA's decision to reject Nextel's application was arbitrary and capricious, in violation of Mass. Gen. Laws ch. 40A, § 17 (Count V).

Both parties have moved for summary judgment. For the following reasons, the plaintiff's motion is GRANTED as to Counts I and II, and DENIED as to Counts III and IV. (The plaintiff did not move as to Count V.) The defendant's motion is DENIED as to Counts I and II, and GRANTED as to Counts III, IV, and V.

---

[1]    The pertinent provisions of 47 U.S.C. § 332(c) are as follows:

(7)    *Preservation of local zoning authority*

(A)    General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B)    Limitations

(i)    The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
(I) shall not unreasonably discriminate among providers of functionally equivalent services; and
(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

*   *   *

(iii)    Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

2

## I. Factual Background

The following facts from the record are not subject to genuine dispute:

Nextel, a corporation organized under Delaware law with a regional office in Lexington, Massachusetts, is licensed by the Federal Communications Commission as a provider of wireless telecommunications services. Nextel utilizes an antenna network spaced geographically across its service territory. Each antenna connects Nextel users within a radius of between two and eight miles. There is currently a gap in coverage of Nextel's antenna system in the vicinity of Milford, Massachusetts.

Nextel determined that it could close the gap by placing an antenna on a parcel of land at 25 Maple Street, Milford. The property, zoned for industrial use, already contains a 150-foot tall antenna tower constructed and used by AT&T Wireless Services ("AT&T"). Under the terms of the zoning variance granted it by the ZBA, AT&T is required to share its tower with a competitor who is granted a special permit so long as the competitor will "absorb all costs associated with permitting and/or construction necessary to accommodate the [competitor's] facilities." See Lazar Aff., Ex. M, at 2.

Nextel hired a structural engineer to perform a stress analysis on the existing AT&T tower, and in a report dated February 16, 2000, the engineer determined that the existing tower was not strong enough to support Nextel's antenna in addition to the antennas already located on it[2]. Consequently, Nextel proposed constructing a 120-foot tall antenna tower, or monopole, on the same parcel of land. Article VIII of Milford's zoning By-Law expresses a preference for the co-location of wireless communications links. The By-Law defines co-location as installation on existing

---

[2]    Besides antennas belonging to AT&T, the existing tower also held antennas belonging to a third competitor, Cellular One.

"equipment mounting structure[s], or on the same lot in [as] close proximity as is practical to the existing structure." See Bruce Aff., Ex. A, at 60[3]. The By-Law also provides that a proposed new antenna structure which is not to be located in the same lot as an existing structure must be separated "by a minimum of 2 miles" from any other antenna structure. Id. at 64. There are two other properties in Milford on which wireless antenna facilities are located, but Nextel would not be able to close its gap in coverage by constructing an antenna at either one.

On May 4, 2000, Nextel applied to the Milford ZBA for a special permit to build a 120-foot antenna tower on the parcel at 25 Maple Street. The ZBA referred the plaintiff's application to the Town Planning Board, which held a hearing on May 15, 2000 to review the application. Prior to the meeting, the Town Planner had written to the Planning Board concerning Nextel's application:

---

[3]     The By-Law provision states:

8.5 Co-location of Wireless Communication Equipment

        All owners and operators of land used in whole or in part for a Wireless Communication Link and all owners and operators of such Wireless Communication Link shall, as a continuing condition of installing, constructing, erecting and using a Wireless Communication Link, permit other public utilities or FCC licensed commercial entities seeking to operate a Wireless Communication Link to install, erect, mount and use compatible Wireless Communication equipment and fixtures on the equipment mounting structure, or on the same lot in close proximity as is practical to the existing structure, on reasonable commercial terms provided that such co-location does not materially interfere with the transmission and/or reception of communication signals to or from the existing Wireless Communication Link, and provided that there are no structural or other physical limitations that make it impractical to accommodate the proposed additional Wireless Communication equipment or fixtures and subject to all other provisions of this By-Law.

Bruce Aff., Ex. A at 60.

4

> The applicant claims a new tower is required because the existing tower cannot structurally support the installation of new antennas and related equipment.  I performed a cursory review of the structural analysis provided by the applicant and concluded that the overstress on the monopole tower reduces the safety margin but will not cause it to fail. If [it] is determined that the reduction in safety factor is not advisable then the applicant should be directed to explore an arrangement wherein Nextel and AT&T enter into a commercial agreement to replace the existing tower with a new one that can accommodate at least 5 carriers with a combined equipment shelter.

Lazar Aff. Ex. G.

The Town Planner recommended the Board give an unfavorable recommendation on Nextel's application "based on insufficient information." After its May 15 hearing, the Board voted to recommend denial of the application to the ZBA, based on the Town Planner's letter. Id. Ex. H. On May 25, Nextel sent a letter to the Planning Board reiterating the engineering advice that the existing tower was not adequate to handle an additional antenna array, and expressing the opinion that the zoning By-Law did not oblige Nextel to enter into a common agreement with AT&T to replace the existing tower. See Lazar Aff., Ex. I.

The ZBA held public hearings on Nextel's application on June 1 and July 6, 2000. At the hearing on July 6, Nextel presented an additional structural analysis of the existing tower that concluded that it could not be safely modified to support the Nextel antenna.  The report and accompanying letter from Martin De La Rosa, a professional structural engineer, concluded that there was no economic or practical way to strengthen the existing shaft. See Lazar Aff., Ex. J, K. Nextel did not explore with AT&T the possibility of replacing AT&T's tower with a tower capable of bearing antennas of multiple carries, at least including AT&T, Cellular One, and Nextel.

5

The ZBA voted unanimously to deny Nextel's application for a special permit. The decision, filed July 19, 2000, stated in relevant part:

6. As part of its initial presentation, the applicant took the position that its antennae and related equipment could not be installed on the existing communications tower based upon a structural analysis. After the first night of hearing, the Board asked, among other things, for an analysis of whether or not the existing facility could be strengthened to accept the applicant's facilities. The applicant did not come forward with any such analysis or further evidence in this regard.

7. Consistent with the goals of the Zoning By-Law, the Board asked the applicant to seriously explore the possibility of constructing one new tower which could handle its facilities together with the existing carriers. It was the view of the Board that the provisions of the By-Law, and the Variance condition [applicable to AT&T], taken together, empower all parties with the ability to bring about such a solution. At the continued hearing, the applicant presented no evidence of any effort in this regard other than to express an opinion that it did not even [have] the right to explore this possibility.

8. Erection of two monopole structures on the subject site, when all facilities and perhaps even others, could be secured upon one structure, runs directly counter to the purposes of the Zoning By-Law cited above to minimize the adverse visual impacts of such facilities.

9. Pursuant to Section 8.7(a) the Board could not find that the existing facility cannot accommodate the equipment proposed by the applicant. Under all of the circumstances and based upon all of the evidence, the Board could not make the findings required [for this issuance of a special permit] by Section 1.10.1(a) and (b) of the Milford Zoning By-Law.

Lazar Aff., Ex. M at 3.

6

## II. Discussion

### A. The Telecommunications Act Claims

The TCA represents "a deliberate compromise between two competing aims – to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Town of Amherst, New Hampshire v. Omnipoint Communications Enterprises, Inc., 173 F.3d 9, 13 (1st Cir. 1999). The statute was enacted "in order to provide a procompetitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunication markets to competition." Omnipoint Communications MB Operations, LLC v. Town of Lincoln, 107 F. Supp.2d 108, 114 (D.Mass. 2000) (citations omitted).

The TCA also places a premium on the speedy resolution of proceedings, directing district courts to "hear and decide such action[s] on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v); see also Town of Amherst, New Hampshire, 173 F.3d at 17 n. 8 ("Congress made clear [in § 332(c)(7)(B)(v)] that it expected expeditious resolution both by the local [zoning] authorities and by courts called upon to enforce the federal limitations [under the TCA].") Summary judgment has thus been deemed particularly appropriate in cases arising under the TCA. See Nextel Communications of the Mid-Atlantic, Inc. v. Manchester by the Sea, 115 F. Supp.2d 65 (D.Mass. 2000).

The standard of review applicable to claims brought under the TCA varies according to the claim. In considering a claim that a town's decision was not supported by substantial evidence contained in a written record, a court's review is deferential to the local authority, but it is "not a rubber stamp." Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F.3d 51, 58 (1st Cir. 2001).

7

On the other hand, claims that the decision or local law itself violated statutory limitations on local

regulation are reviewed de novo. See id.; see also Town of Amherst, 173 F.3d at 16, n.7.

### 1. Substantial evidence in a written record

A local body's denial of authorization to construct a telecommunications facility must be "in

writing and supported by substantial evidence contained in a written record." 47 U.S.C. §

332(c)(7)(B)(iii). "Substantial evidence" means such relevant evidence as "a reasonable mind might

accept as adequate to support a conclusion." Penobscot Air Services, Ltd. v. Federal Aviation

Administration, 164 F.3d 713, 718 (1st Cir. 1999). "The substantial evidence test . . . involves some

deference but also has some bite." Town of Amherst, 173 F.3d at 16.

The TCA requires local boards to issue a decision in writing that contains a sufficient

explanation of the reasons of the denial so that a reviewing court may evaluate the evidence in the

record that supports those reasons. See Southwestern Bell Mobile Systems, 244 F.3d at 60. While

an exhaustive record is not necessary, the local authority's written reasons must be clearly and fully

expressed. See Cellco Partnership v. Town of Douglas, 81 F. Supp.2d 170 (D.Mass. 1999) (ZBA's

opinion not "supported by substantial evidence contained in a written record" where it fails to give

reasons for denial of plaintiff's petition, much less support reasons with substantial evidence).

The ZBA's reason for denying Nextel's application for a special permit was that Nextel had

not satisfactorily established that its antennas could not be safely added to the existing AT&T tower.

In effect, the ZBA decided not to credit the only evidence in the record on the question. It was not

required to accept the applicant's evidence at face value. On the other hand, it could not simply

ignore evidence that seemed to tend to an inconvenient conclusion. See SNET Cellular, Inc. v.

Angell, 99 F. Supp.2d 190, 195 (D.R.I. 2000) ("While the Board may not ignore evidence presented

by the applicant, it is not required to credit the evidence; but, where the applicant's evidence is

8

uncontroverted, there must be a good reason for rejecting it.")

Here the only evidence before the ZBA that addressed whether the existing tower could support Nextel's antennas was contained in the reports of the structural engineers retained by Nextel. There were no reports, even staff reports, that proffered an informed engineering view to the contrary. The closest thing to an engineering analysis was the Town Planner's conclusion, based on an admittedly "cursory review" of the engineers' reports, that adding Nextel's antennas to the tower would reduce the safety margin, but not cause an outright failure of the structure. This was part confirmation and part qualification of the engineers' reports, but it was not contradiction. The ZBA did not explicitly refer to the Town Planner's view in explaining its decision, so it is not clear from the record whether it even considered it.

The ZBA's position is that it asked Nextel for further information, and Nextel failed to provide it. The ZBA's decision says, "After the first night of the hearing, the Board asked, among other things,[4] for an analysis of whether or not the existing facility could be strengthened to accept the applicant's facilities. The applicant did not come forward with any such analysis or further evidence in this regard." In the first place, the record does not support the statement that Nextel submitted no further evidence. At the ZBA's second hearing on July 6, Nextel submitted a letter from its consulting engineers stating that there was no economical and practical way to reinforce a monopole like AT&T's. Lazar Aff. Ex. K. Though the letter was summary and did not offer detailed support, it referred to an additional structural analysis report dated June 22, 2000[5]. The

---

[4]    There is no transcript or other record of the hearings before the ZBA, so the record does not disclose what "other things" might have been requested of Nextel by the ZBA.

[5]    It is not clear from the record whether the June 22 report, which is similar in presentation and conclusion to the February 16 report, was also submitted to the ZBA.

9

letter tendered an opinion from the engineer that was responsive to the ZBA's concern about potential strengthening of the AT&T monopole.

Moreover, the ZBA's treatment of that opinion was similar to its treatment of the prior structural analysis; rather than offer specific criticism of the engineers' opinions – that they were based on inaccurate data, for instance, or employed an errant methodology – the board simply expressed skepticism. The ZBA did not rest its skepticism on identified scientific or technical grounds, but simply said it wanted more, or more convincing, information. The ZBA failed to point out in what respect the already submitted scientific and technical information was unpersuasive. And it similarly failed to point to any evidence in the record that tended to support a conclusion other than the one supported by Nextel's evidence. Simply telling an applicant, "We're not convinced," and nothing more presents a moving target to the applicant. The applicant does not learn from such an uninformative rebuff what more might be shown to overcome the skepticism.

The ZBA had an obligation to give a reason for its rejection of uncontroverted evidence in the record. Angell, 99 F. Supp.2d at 95. Because it did not, and because there is no evidence in the record that supports a finding contrary to the one supported by the rejected evidence, Nextel's plea that the ZBA's decision is unsupported by substantial evidence in the written record, as required by 47 U.S.C. § 332(c)(7)(B)(iii), must be sustained. Nextel is entitled to judgment in its favor under Count I.

10

## 2. Discrimination among providers

The second basis for its decision expressed by the ZBA was that Nextel refused to investigate with AT&T the possibility of replacing the existing tower with a new one that could accommodate AT&T, Nextel, Cellular One, and possibly others.

The TCA prohibits unreasonable discrimination "among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I). This provision fosters competition in the telecommunications industry, one of the goals of the TCA. See New York SMSA Limited Partnership v. The Town of Clarkstown, 99 F. Supp.2d 381, 389 (S.D.N.Y. 2000) ("[T]he purpose of the TCA is not to substitute the judgment of the federal courts . . . for that of state and local governments but rather to ensure that localities do not exercise their power over zoning decisions in a way that results in the denial of telecommunication services or the denial of competition.").

The Town's zoning By-Law incorporates a preference for co-location of wireless communications links. Bruce Aff., Ex. A at 60. The By-Law permits co-location either by mounting additional antennas on an existing structure or by mounting them on a separate structure erected on the same lot as close as practicable to the existing structure. Id. Having sufficiently demonstrated without contradiction that the first option could not be achieved in conformity with accepted safety standards,[6] Nextel proposed to satisfy the co-location preference under the second

---

[6]

In addition to structural safety, the By-Law permits an applicant to demonstrate that its equipment cannot be added to an existing structure because it would not be commercially reasonable to do so. By-Law, Section 8.6.3.3(b)(4); Bruce Aff. at 62. The record before the ZBA contained evidence to support a finding that the prospect of replacing the AT&T tower with a new, stronger tower for multiple carriers would not be commercially reasonable. The By-Law itself establishes the presumption that "[c]osts exceeding new development are presumed to be unreasonable." Id. Necessarily, the cost of both demolishing an existing tower and building a replacement would exceed

option. Rather than assess whether Nextel's proposal qualified under the second co-location option authorized in the By-Law, the ZBA interposed a third option: Nextel should negotiate with AT&T (and presumably the landowner) to replace the existing AT&T tower with one that could accommodate multiple carriers. The ZBA's insistence that Nextel undertake such an inquiry with AT&T in effect imposed on Nextel a condition or requirement that was not expressed in the zoning By-Law. The imposition on Nextel of a criterion not expressed in the By-Law was an ad hoc change in the rules, applicable only to Nextel. That is exactly the sort of discrimination that is forbidden by the TCA.

An applicant such as Nextel is justified in asking the ZBA to decide whether to grant a permit by applying the rules as they existed when the application was filed, and an applicant's refusal to cooperate with a condition newly imposed – not universally by the By-Law, but ad hoc by the decision maker – is not a justifiable reason for rejection of the application. To the extent the ZBA' decision denying the permit rested on Nextel's refusal to explore replacement of AT&T's tower, the decision was discriminatory under § 332(c)(7)(B)(i)(I).

### 3. Prohibition of personal wireless services

The TCA's ban on local regulation prohibiting the provision of personal wireless services has been interpreted to prohibit regulatory schemes that prevent providers from establishing the infrastructure needed to elide meaningful gaps in the coverage that they offer. See AT&T Wireless PCS, Inc. v. Town of Concord, et al., No. 99-11866, slip op. at 2 (D.Mass. Jan. 12, 2001); Omnipoint Communications MB Operations, LLC, v. Town of Lincoln, 107 F. Supp.2d 108, 117-119 (D.Mass. 2000). It is possible that a single denial of an application for a permit is an effective

---

the cost of just building an additional tower. At the very least, there was nothing in the record from which the ZBA could have found that the By-Law presumption did not apply.

prohibition on the provision of personal wireless services. The First Circuit has noted, "Obviously, an individual denial is not automatically a forbidden prohibition violating the 'effects' provision. But neither can we rule out the possibility that–based on language or circumstances–some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service." Town of Amherst, New Hampshire, 173 F.3d 9, 14 (1ˢᵗ Cir. 1999). A telecommunications provider bears a "heavy burden" in attempting to show that a town's regulatory scheme has the effect of prohibiting the provision of services in the town: the provider must show not only that the permit application has been rejected, but also that "further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." Id.

The record does not support Nextel's argument that the individual denial of its permit application had the effect of prohibiting personal wireless services in Milford. To the contrary, the record contains ample evidence of Milford's willingness to grant permits for such services. Even if the ZBA's decision was motivated by animus or hostility toward Nextel, as the plaintiff alleges, that fact would not, in the circumstances shown in this record, warrant a conclusion that the Town was prohibiting, de facto, personal wireless services, though it would be additional support for a finding of discrimination.

**B. 42 U.S.C. § 1983**

In Count IV of the complaint, the plaintiff alleges that the defendant violated the Civil Rights Act, 42 U.S.C. § 1983, by denying the plaintiff its rights under the TCA.  Judges in this District have differed as to whether § 1983 provides a remedy for violations of the TCA, and the First Circuit has not addressed the issue.

In Sprint Spectrum L.P. v. Town of Easton, 982 F. Supp. 47, 53 (D.Mass. 1997), Judge Tauro ruled that a § 1983 remedy was available for violations of the TCA, because the TCA did not

13

provide a comprehensive enforcement scheme intended to supplant a § 1983 remedy. However, in

National Telecommunication Advisors, Inc. v. City of Chicopee, 16 F. Supp.2d 117 (D.Mass. 1998),

Judge Ponsor decided that a § 1983 action was not available to obtain a remedy for violation of the

TCA, because while the TCA bestows a federal right the denial of which might conceivably be

actionable under § 1983, the new cause of action that the TCA creates, and the expedited review of

such claims it mandates, amount to a comprehensive remedial scheme that precludes an essentially

redundant remedy under § 1983. National Telecommunication Advisors, Inc., 16 F. Supp.2d at 122.

I find the Chicopee analysis to be the more persuasive one. It might be added in passing that

the omission of a provision for attorneys' fees in a statute as otherwise complete and detailed as the

TCA is a strong indication that Congress did not intend successful suitors under the TCA to have

such a remedy. It would contravene that intention to provide such a remedy under the more general

auspices of the Civil Rights Act.

A §1983 remedy is not available to the plaintiff for violations of the TCA, and the

defendants' motion for summary judgment on Count IV is granted.

### C. Mass. Gen. Laws ch. 40A § 17

Finally, the plaintiff seeks review of the ZBA's decision under the Massachusetts zoning

enabling statute, Mass. Gen. Laws ch. 40A, § 17, which authorizes a court to set aside a local

board's decision if it is arbitrary or capricious.[7] The state statute mandates de novo review of the

---

[7]     Mass. Gen. Laws ch. 40A, § 17, states in relevant part:

Any person aggrieved by a decision of the board of appeals or any special permit
granting authority or by the failure of the board of appeals to take final action
concerning any appeal, application or petition within the required time or by the
failure of any special permit granting authority to take final action concerning any
application for a special permit within the required time, whether or not previously
a party to the proceeding, or any municipal officer or board may appeal to the land

14

decisions of local zoning authorities. See Roberts v. Southwestern Bell Mobile Systems, Inc., 709 N.E.2d 798 (Mass. 1999).

The defendants contend that the plaintiff's state claim is barred because the plaintiff has failed to comply with the state requirement that any appeal from a decision of a local zoning board be filed within 20 days of the board's decision and that notice of the appeal and a copy of the complaint be given to the town clerk "so as to be received within such twenty days." Mass. Gen. Laws ch. 40A, § 17. In this case, Nextel's complaint was filed within 20 days of the ZBA's decision, but the Milford Town Clerk did not receive the required notice and copy of the complaint until he was served on August 24, 2000. Nextel argues that its service of the complaint is governed by the Federal Rules of Civil Procedure, not by the notice and service provision of the state statute, and that its service on the town clerk, though tardy by the state standard, complied with the Federal Rules.

Nextel misapprehends the provision in question as one merely governing the service of process in an action for judicial review. The provision requires delivery of notice of the appeal to the town clerk (along with a copy of the complaint) not to effect service on the clerk as a party to the litigation, which may or may not be necessary, depending on the parties named as defendants

---

court department [or] the superior court department in which the land concerned is situated ... by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk.... Notice of the action with a copy of the complaint shall be given to such city or town clerk so as to be received within such twenty days. The complaint shall allege that the decision exceeds the authority of the board or authority, and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled.... "The court shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require.

15

in the complaint.[8] Rather, the particular requirement of notice to the town clerk gives *public notice* of the appeal to persons who are not parties and who will not be subject to service – such as abutters or other residents or interested persons. See Pierce v. Board of Appeals of Carver, 343 N.E.2d 412, 415 (Mass. 1976) ("[A] record in the clerk's office should be available to furnish 'constructive' notice to interested persons that the decision of the board of appeals has been challenged and may be overturned.")(construing predecessor statute); Costello v. Board of Appeals of Lexington, 333 N.E.2d 210, 212 (Mass. App. Ct. 1975) ("The purpose of the notice provision is to give interested third persons at least constructive notice of the appeal.")(construing predecessor statute).

The federal procedural rules governing service of process do not address the question of public notice of appeals from decisions entered by municipal boards, and it is an inadequate answer that the Federal Rules prescribe how parties must be served.

Moreover, for purposes of the Erie doctrine,[9] because refusal by a federal court to apply the state rule would encourage forum shopping by non-residents appealing local zoning decisions and, in effect, give a broader right to appeal to those who can bring diversity actions[10] in federal court

---

[8]    The town clerk of Milford is not named as a party to this action. Normally, it will be sufficient to name the relevant board and its members as parties, omitting either the Town or its clerk. See Mass. Gen. Laws ch. 40A, § 17. Even when the Town is named a party, service on the municipal corporation may be effected either by service upon the treasurer or the clerk. See Mass.R.Civ.P. 4(d)(4); Mass. Gen. Laws ch. 223, § 37.

[9]    See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

[10]    Jurisdiction in this case is founded on 28 U.S.C. § 1331 (federal question) because the main claims arise under the TCA. The court's jurisdiction over the state law claim is based on 28 U.S.C. § 1367 (supplemental jurisdiction). There is no doubt that Massachusetts law governs the state law claim, except for matters of procedure applicable to the case as a whole. The analysis of Erie issues is the same for a state claim brought within the court's supplemental jurisdiction as for one brought within its diversity of citizenship jurisdiction. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); Doty v. Sewall, 908 F.2d 1053, 1063 (1st Cir. 1990).

16

than to those whose resort would be limited to the state courts, the policies underlying federal application of state rules call for this Court to insist on compliance with the notice provision of § 17 to the same extent that the courts of Massachusetts would. <u>See</u> <u>Hanna v. Plumer</u>, 380 U.S. 460 (1965); <u>Ragan v. Merchants Transfer & Warehouse Co., Inc.</u>, 337 U.S. 530 (1949); <u>Marshall v. Mulrenin</u>, 508 F.2d 39 (1st Cir. 1974).

The Massachusetts courts require strict compliance with the notice provision set out in §17. Failure to comply results in dismissal of the appeal. <u>See</u> <u>Costello</u>, 333 N.E.2d at 211; <u>Pasqualino v. Board of Appeals of Wareham</u>, 440 N.E.2d 523 (Mass.App.Ct. 1982). Accordingly, the defendants are entitled to summary judgment dismissing Count V of the complaint.

## IV. Conclusion

A mandatory injunction is the proper remedy where a Town violates the siting provision of the TCA. <u>See</u> <u>Cellular Telephone Company v. Town of Oyster Bay</u>, 166 F.3d 490, 497 (2d Cir. 1999). In this case, the defendants have violated 47 U.S.C. § 332(c)(7)(B)(iii) (Count I) and 47 U.S.C. § 332(c)(7)(B)(i)(I) (Count II), and the plaintiffs are entitled to summary judgment on those counts.

Judgment shall enter declaring that (1) the decision of the Town's ZBA denying the plaintiff's application for a special permit was not based upon substantial evidence contained in a written record, and (2) the application of a condition to the plaintiff's application that was neither authorized in the Town's zoning By-Law nor applied generally to other applicants constituted unreasonable

17

discrimination among providers of functionally equivalent services, both in violation of the Telecommunications Act of 1996.

In addition, an injunction shall enter commanding the defendants to issue to the plaintiff the special permit applied for. "Simply remanding the matter to the board for their further determination would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis." Nextel Communications of the Mid-Atlantic, Inc., 115 F. Supp.2d at 73; Sprint Spectrum L.P., 982 F. Supp. at 52.

Judgment shall enter for the defendants under Counts III, IV and V.

SO ORDERED.


_____          _____
       DATE                            DISTRICT JUDGE


18