UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03 CV 12517 MEL

MCF COMMUNICATIONS, INC. and )
OMNIPOINT HOLDINGS, INCORPORATED )
)
Plaintiff )
)
v. )
)
THE TOWN OF STOUGHTON, )
THE TOWN OF STOUGHTON ZONING BOARD OF APPEALS, )
and ALLAN R. KATZ, EDWARD F. COPPINGER, ORLANDO )
DiGIAMPIETRO, HERBERT MUSMON, STEVEN D. MITCHELL, )
and WILLIAM FRANCIS, individually and as they are members of the )
STOUGHTON ZONING BOARD OF APPEALS )
)
)
Defendants )

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Plaintiffs oppose the Defendant's Motion to Dismiss Count VII of their Complaint for failure to state a claim upon which relief can be granted.

### APPLICABLE LEGAL STANDARD

Plaintiffs' Complaint can only be dismissed where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 234 (D. Mass. 1995). The Court must "accept all well-pled averments as true, and draw all reasonable inferences therefrom in [the plaintiff's] favor. *Remco Distributors, Inc. v. Oreck Corporation*, 814 F. Supp. 171, 174 (1992); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). At this stage, "it is enough for a plaintiff to sketch a

scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim." *Garrett v. Taudy Corp., 295 F. 3d 94, 105 (1st Cir. 2002)*, and "great specificity is ordinarily not required to survive a Rule 12(b)(6) motion." *Gallego v. Wilson, 882 F. Supp. 1169, 1170 (D. Mass. 1995)*.

In the context of motion to dismiss for failure to state a claim, the demands on the pleader are minimal, although minimal requirements are not tantamount to nonexistent requirements. *Cooperman v. Individual, Inc., 171 F.3d 43 (1st Cir. 1999)*.

## ARGUMENT

### I. PLAINTIFFS' CIVIL RIGHTS CLAIM CAN BE SUPPORTED

The Town's motion assumes that the *only* basis for the Plaintiffs' civil rights claim is a straightforward cause of action under the Telecommunications Act of 1996. However, even the leading precedent cited by their Memorandum suggests that unique facts that go beyond those of a garden variety TCA case may render a municipality, its zoning authority, and its members, exposed to civil rights liability.

A municipality may be held liable under 42 U. S. C. when it employs a "policy" or "custom" that is the cause or motivating force behind injury to the plaintiff's federally protected right. *Board of County Commissioners of Bryan County v. Brown*, 520 U. S. 397 (1997); *Silva v. Worden*, 130 F. 3d 26, 32(1st Cir., 1997). The municipality may be held liable for acts taken pursuant to a "policy" where a decisionmaker possessed final authority to establish municipal policy with respect to the action..." *Pembaur v. Cinncinati, 475 U.S. 469, 481(1986)*. This can be so even though the policy is benign on its face, where underneath the textual facade it appears that the legislative body acted out

of a constitutionally impermissible motive. See *Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20, 23 (1st Cir.1992); *Scott-Harris v. City of Fall River*, 134 F. 3d 427, 436 (1st Cir., 1997). And in that context, it is not even necessary that a majority of the members of the body acted impermissibly. *Southern Worcester County Regional Vocational School v. Labor Relations Commission*, 386 Mass. 414 (1982).

Likewise, individual liability of the Board members may not be avoided on the basis of legislative immunity where the actions complained of are administrative and not legislative. The dividing line "is drawn along a functional axis that distinguishes between legislative and administrative acts." *Silva, supra at 440*. Where the facts used in the decision are specific to the Plaintiff's individual situation and the impact of the decision is also particular to the Plaintiff, the decision is administrative and no legislative immunity attaches. *Id.; Cutting v. Muzzey*, 724 F. 2d 259, 261 (1st Cir., 1984).

The Zoning Board of Appeals is the final authority on determining applications for special permits. The special permit decision denying the zoning application states "this may not be the best district to locate tower, the tower could be place (sic) in a better location." According to the transcripts of the hearing, it is clear that the preferred property they were referring to was the Ames Rifle & Pistol Club. See, Affidavit of Brad Gannon In Opposition to Motion to Dismiss, attached hereto as Exhibit A, at ¶ 7. The Chairman of the Board admitted in the transcript that he was a member of "a gun club," without specifying what club. See Transcript of Case # 3662, attached to Gannon Affid., at 21. Some of the members of the gun club are residents of Stoughton, and may have spoken to the Board members outside of the hearing. Gannon Affid. Exh. A at ¶ 5.

It is also plain that at least some of the Board members were motivated by their

desire to keep this facility out of the Town of Stoughton entirely. During the discussion regarding the Special Permit application, the Chairman of the Board and member Giampietro repeatedly asked why the town had to be in Stoughton instead of Sharon. See Transcript of Case # 3663, attached to Gannon Affid., at pp. 4-7.

Finally, at the very time that the Board was considering the Plaintiffs' application, it had on its agenda a petition of one of their associate members to remove restrictions from a competing communications tower (one that was granted identical zoning relief previously) that would expand the capacity of that tower. That member, Mr. Capozzoli, participated in the Plaintiffs' public hearing. Id. at ¶¶ 9-11; Transcript of Case #3662, attached to Gannon Affid., at 22.

None of the cases cited by the Town in support of its Motion to Dismiss involve instances where the Board's denial was alleged (explicitly or implicitly) to have been precipitated by improper or nefarious animus. Specifically, in *National Telecommunications Advisors, Inc. v. Chicopee, 16 F. Supp. 117 (D. Mass. 1998)*, the facts contain a simple recitation that the Board denied the petition because it preferred that the proposed location be used for "true industrial use." *Id at 118*. The opinion noted that the civil rights count had apparently been "tacked on" simply as a means of seeking attorneys' fees. *Id. at 122*. Finally, Judge Ponsor noted the possibility that "factual differences may make [Judge Tauro's decision in Sprint v. Town of Easton] distinguishable…" from the Chicopee case. Id at 123.

Judge Ponsor took pains to note that the Board in Chicopee appeared to have acted properly and fairly:

> It is worth noting that the actions of the defendants here did not constitute flagrant or protracted violations of NTA's legal rights. The October 23, 1997 settlement agreement and order found only that the written record accompanying the Board's decision did not support the denial of NTA's application for a special permit. It is possible that, but for the failure to compile a proper written record, as required by the TCA, the Board's decision may have been entirely supportable. When the lawsuit was brought, underlining the Board's lapse, a settlement was quickly reached and the permit issued. Particularly given the recent vintage of the statute, and the inevitable awkwardness small municipalities may experience in adjusting to its requirements, the conduct of Chicopee's Board of Aldermen could hardly be called contumacious.

Id.[1]

Judge Ponsor's observations should be considered in contrast to what the Plaintiffs here may be able to demonstrate: that members of the Stoughton Board, acting *eight years* after enactment of the TCA, may have not only violated Plaintiffs' federal protected rights under the TCA, see *Chicopee, supra at 121*, but in the process done so while engaged in potential conflicts of interest on two levels (acting to protect or promote the interests of the competing gun club to which a Board member shared membership, and acting to protect the economic interest of an associate Board member in a competing tower). Coupled with this, the record will demonstrate the Board members' stubborn resistance to fairly evaluating the evidence of visual impact in twice ignoring opportunities to view visibility demonstrations[2], and emphasizing its own preoccupation

---

[1] Likewise, the other cases cited by the Town contain no references to alleged conduct that would suggest inappropriate conduct on the part of a municipal official.

[2] It is notable that, in contrast to the Chicopee Board's swift arrival at settlement after learning of its shortcomings, the Stoughton Board members did not even follow through on their promise to attend a special visibility demonstration scheduled exclusively for them during a period of settlement negotiations.

(and not much other factual objection) to keeping a tower out of the town of Stoughton and putting it in either Sharon or Easton.

Based upon the record and the accompanying affidavit of Brad Gannon, the Plaintiffs submit that they have carried their burden of "sketch[ing] a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim." *Garrett v. Taudy Corp., supra* at 105.

For these reasons reasons, the Plaintiffs respectfully requests that the Court deny the Defendant's Motion to Dismiss Count VII of its Complaint.

MCF COMMUNICATIONS, INC. and<br>
OMNIPOINT HOLDINGS, INC.<br>
By their attorneys,<br>
<br>
_____<br>
Peter B. Morin, Esquire (BBO#355155)<br>
McDermott, Quilty & Miller LLP<br>
21 Custom House Street<br>
Boston, MA 02110<br>
617-946-4600

Dated: September 9, 2004

## CERTIFICATE OF SERVICE

I, Peter B. Morin, do hereby certify that on this day, I served a copy of the above document upon the attorney of record for each other party by first class mail, postage prepaid.

_____
Peter B. Morin

6